**STATE of Iowa, Appellee,**

v.

**Carlos Ariel GOMEZ GARCIA, Appellant.**

No. 15-1543

Supreme Court of Iowa.

Filed November 17, 2017

Courtney T. Wilson of Hopkins & Huebner P.C., Davenport, for appellant.

Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Louis S. Sloven, Assistant Attorneys General, Alan Ostergren, County Attorney, and Korie Shippee, Assistant County Attorney, for appellee.

WATERMAN, Justice.

In this appeal, we must decide whether the defendant is entitled to an automatic new trial after the district court, over his objection, required a standby interpreter for his jury trial. The defendant had requested an interpreter for his initial bond

hearing, and one was provided for all pretrial hearings. On the morning of the scheduled jury trial, however, the defendant sought to waive the interpreter, arguing that he did not need one and would be distracted by the translation and that jurors would be prejudiced. The district court nevertheless ordered a standby interpreter to sit in the gallery translating through a wireless earpiece the defendant could remove at his option. The defendant waived the jury and was convicted of selling cocaine in a bench trial.

The defendant appealed, contending the district court erred by requiring the standby interpreter, which forced him to waive the jury. He also contended on appeal through new counsel that his trial counsel was ineffective for waiving the jury without a proper colloquy. We transferred the case to the court of appeals, which reversed and ordered a new trial without any showing of prejudice. We granted the State's application for further review.

On our review, we hold that the defendant had a right to waive the interpreter, but we conclude under this record that the district court did not abuse its discretion by ordering a standby interpreter over his objection. We decline to decide the defendant's claim his counsel was ineffective in waiving the jury because the record is inadequate. The defendant may pursue that claim in a postconviction action. We vacate the decision of the court of appeals and affirm the district court judgment.

## I. Background Facts and Proceedings.

According to the trial court's factual findings and verdict, Carlos Ariel Gomez Garcia, then age twenty-two, sold K.M. cocaine for $150 in the parking lot of West Liberty Foods on June 27, 2013. K.M. was a confidential informant working with Muscatine County Sheriff Detective Courtney Kelley. An undercover special agent, Jessie Whitmer, accompanied K.M. to the drug buy, which was photographed by Detective Kelley from a nearby vehicle. At the time, Kelley and Whitmer were unaware K.M. had been Gomez Garcia's girlfriend in a sexual relationship.

On December 31, 2014, Gomez Garcia was charged with delivery of a controlled substance (cocaine) in violation of Iowa Code section 124.401(1)(c)(2)(b) (2013). Gomez Garcia filed a written arraignment and plea of not guilty, in which he acknowledged he could "read the English language" and had a tenth-grade education. He is a native of Honduras who has lived in the United States for approximately ten years. The court continued Gomez Garcia's bond review hearing, initially scheduled for January 9, 2015, to January 23 because Gomez Garcia asserted he needed an interpreter. The district court entered an order appointing an interpreter for the bond review hearing "and the duration of th[e] case." An interpreter was made available to Gomez Garcia for the January 23 bond review hearing as well as for all other pretrial court appearances, specifically, a February 13 continuance hearing, an April 23 motion hearing, another continuance hearing June 12, a June 16 meeting at the jail, and the July 2 final pretrial conference.

On the morning of trial on July 13, however, Gomez Garcia's counsel requested in chambers that Gomez Garcia be allowed to waive his right to have an interpreter present during the jury trial. The two interpreters present at the time were duly sworn, then excused from the chambers.[1] The court proceeded without an in-

---

1. A court must appoint more than one interpreter during a court proceeding "[w]hen a party needs an interpreter and the court expects the interpreted event on a given day to

terpreter. Counsel for Gomez Garcia stated,

> Carlos would like to waive the use of the presence of the interpreters. He doesn't need one. He speaks English and understands it perfectly. I've met with him numerous times, and we've never had an interpreter.
>
> An interpreter happened sort of spur of the moment during an initial bond review hearing, but we never had a hearing for whether that was actually needed, and Carlos has a real concern as to the danger of prejudice from having an interpreter present and interpreting everything for him.
>
> It's also confusing for him because he understands English, and so he's listening to the English and then interrupted by someone speaking in his ear. He doesn't want that.
>
> ... [H]e understands that he can have one if he wanted one, but he absolutely does not want one. So having one forced on him for a trial, in our view, would deprive him of a fair trial.

The court stated it was unaware of any authority on a defendant's right to waive the use of an interpreter. The court determined the right to waive an interpreter

> would be akin to [the] right to waive counsel, which is complex and requires an affirmative showing on the part of the Defendant that he understands the right that he's waiving and is able to exercise his rights to fair trial having waived that right.

The court proceeded to question Gomez Garcia, who stated that his foster family spoke to him in Spanish and English. Gomez Garcia answered questions regarding his understanding of the charges against him. The court decided to grant the motion

"in part": rather than having the interpreters stand or sit next to Gomez Garcia and whisper in his ear, the court ordered the interpreters to be on "standby" and provide interpretation through a wireless earpiece. The court allowed Gomez Garcia to decide whether to use the earpiece. Additionally, the court offered to give a limiting instruction to the jury to make no assumptions based on the presence of an interpreter in the courtroom.

The court next suggested that the interpreters sit in the gallery on the prosecution's side. The assistant county attorney replied, "I will tell you that I can't do that. I would find that incredibly distracting to have someone standing right behind me speaking Spanish." Gomez Garcia's counsel noted he would "have the same exact problem."

At this time, Gomez Garcia's counsel moved to continue the trial and have Gomez Garcia tested for his understanding of English. Counsel pointed out it would be "obvious" to everyone in the courtroom why the interpreters were speaking Spanish throughout the trial. The State agreed to a continuance conditioned on a waiver of speedy trial. The court, however, denied the motion to continue, noting there was "a jury ready to go." The court again suggested a limiting instruction for the jury and elaborated why a standby interpreter would be required:

> I'm basing my ruling on the theory that it is the Court's duty to assure a fair trial. And in this case, I think a fair trial means I must have an interpreter available, at least on a standby basis.

Defense counsel contrasted a standby attorney, who "is silent and does nothing[,]" with a standby interpreter, who would be speaking continuously. He asked why the

be complex or to last more than four hours." Iowa Ct. R. 47.3(12)(*b*). Interpreters are provided for indigent defendants at State expense.

court denied the motion to continue. The court explained that while the parties had established that Gomez Garcia has a basic level of competency in English, the court was concerned about determining "[w]hat level of competency in English is sufficient to proceed without an interpreter[.]" The court stated, "I'm not aware of a good legal standard that answers that question. Taking a test and giving me a result simply won't be. It's not legal guidance."

The court next heard arguments on Gomez Garcia's motion in limine to exclude evidence of his prior felony conviction for unlawful reentry into the United States. The State argued that if Gomez Garcia testified, he could be impeached with that felony conviction. Gomez Garcia argued the felony conviction was unduly prejudicial. The court reserved ruling, stating that issue would become "ripe" only if Gomez Garcia opted to testify.

Gomez Garcia waived his right to the jury trial in an unreported colloquy during the recess that immediately followed the court's announcement reserving ruling on his motion in limine. No written waiver of the jury trial was filed. The trial transcript noted that the "[d]efendant waived jury trial during recess, and the Court proceeded with bench trial." The record is silent as to why Gomez Garcia waived his right to trial by jury. The order and verdict stated,

> Prior to the commencement of trial, the Court engaged in a colloquy with the defendant concerning his right to a jury trial and his waiver of the same. After engaging in a full colloquy, the Court finds the defendant knowingly, intelligently and voluntarily waives his right to a jury trial in this matter and consents to having this matter tried solely by the Court.

The State called three witnesses: K.M., Detective Kelley, and Special Agent Whitmer. Gomez Garcia also testified and admitted to delivering cocaine:

> Q. And so you helped [K.M.] get the cocaine; is that right? A. Yes.
>
> . . . .
>
> Q. I think I heard you say that you agree that on June 27th, 2013, you were the person who gave cocaine to [K.M.]; is that correct? A. Yes.
>
> . . . .
>
> Q. So you don't dispute that you actually delivered cocaine on June 27th, 2013; is that right? A. Yes.

Gomez Garcia relied on an entrapment defense. The district court summarized the testimony in its factual findings as follows:

> Garcia testified that he and [K.M.] had been friends for a period of time prior to the drug buy. He said they were in a sexual relationship, a fact admitted by [K.M.] Garcia testified he only acquired cocaine for [K.M.] because she was his friend and he did not want to damage their relationship by refusing her demands for drugs. He claims he made no money on the transaction and was purely a middleman. Neither Kell[e]y nor Whitmer were aware of the sexual relationship between the informant and Garcia prior to the drug buy. Garcia urges that his agreement to provide drugs was forced upon him by the State['s] informant who plied him with the strings of their emotional attachment. However, his own testimony was that he provided the cocaine to her because he did not want to damage their friendship. He did not assert that [K.M.] threatened him or used their relationship in any way to gain access to drugs. In fact, Garcia testified that previously, [K.M.] had discussed with him the possibility of having his child and Garcia refused because he did not want a drug user to be the mother of his child. It is apparent the relationship between Garcia and [K.M.]

was nothing more than that of friends even though they were engaged in a sexual relationship. Therefore, [K.M.'s] ability to use their relationship as a lever to ply drugs from Garcia would be limited, at best. :

The court found Gomez Garcia guilty as charged, rejecting his entrapment defense:

> The Court further FINDS that Garcia's claim of entrapment is not substantiated by the credible evidence. Neither he nor [K.M.] testified as to any statements or acts said or done by [K.M.] to unduly persuade or entice Garcia into providing cocaine. Although the two had been lovers, Garcia rejected [K.M.] as a potential parent due to her drug addiction and told her so. It is clear their relationship was not a committed, loving relationship but was friends with benefits. Garcia testified his motivation for providing drugs was merely to maintain a friendship. There is no evidence Garcia was entrapped by anything [K.M.] said or did in order to entice him to provide drugs. This Court FINDS that Garcia's sole motivation in providing drugs was to receive a monetary benefit, e.g. to receive $150 in exchange.

Gomez Garcia was sentenced to serve a period not to exceed ten years, and he timely appealed. We transferred the case to the court of appeals.

On appeal, Gomez Garcia claimed the district court abused its discretion by denying his request to waive his right to an interpreter. He asserts that the denial of this request forced him to waive his right to a jury trial because jurors would be prejudiced upon seeing him using an interpreter. Gomez Garcia also claimed he was denied effective assistance of counsel because his attorney failed to ensure that Gomez Garcia's jury-trial waiver was knowing and voluntary.

The court of appeals concluded "the statutory right to an interpreter may be waived" and Gomez Garcia knowingly and voluntarily waived that right. The court of appeals concluded the district court erred by requiring a standby interpreter against Gomez Garcia's "expressed desire to proceed without that assistance." Reversing and remanding for new trial, the court of appeals explained that the statutory right to waive an interpreter

> reflects Gomez Garcia's individual choice regarding how his defense is conducted, and obtaining reversal for a violation of that right does not require a showing of prejudice because the aim is to protect that free choice, independent of concern for the objective fairness of the proceeding.

The court of appeals did not reach Gomez Garcia's ineffective-assistance-of-counsel claim. We granted the State's application for further review.

## II. Standard of Review.

 The parties agree that the district court's order requiring a standby interpreter over the defendant's objection is reviewed for abuse of discretion, and we so hold. *See State v. Leutfaimany*, 585 N.W.2d 200, 207 (Iowa 1998) (reviewing district court's denial of defendant's application for an interpreter for abuse of discretion). "[A]buse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Wilson*, 878 N.W.2d 203, 210–11 (Iowa 2016). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). "Even if a trial court has abused its discretion, prejudice must be shown before we will reverse." *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

 To the extent that resolution of this appeal turns on the interpretation of a statute, our review is for correction of errors at law. *State v. Wagner*, 596 N.W.2d 83, 85 (Iowa 1999). We review de novo claims of ineffective assistance of counsel. *State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003).

## III. Analysis.

The State does not dispute Gomez Garcia's claim that he was entitled to waive use of an interpreter at trial. We must decide whether the district court abused its discretion by requiring a standby interpreter over Gomez Garcia's objection. To put that issue in context, we first provide an overview of the law governing use of interpreters. Next we determine that defendants such as Gomez Garcia are entitled to waive the services of an interpreter after requesting and using one during pretrial proceedings. We then provide some direction on the procedure to exercise that waiver. Against that backdrop, we analyze whether the district court committed reversible error by ordering a standby interpreter over Gomez Garcia's objection.

**A. Iowa Law on Interpreters.** Under Iowa Code section 622A.2, "[e]very person who cannot speak or understand the English language and who is a party to any legal proceeding ... shall be entitled to an interpreter to assist such person throughout the proceeding." Iowa Code § 622A.2 (2017).

When the court or court personnel have a reasonable basis to believe a person has limited English proficiency [LEP], unless the court determines that another reasonable accommodation is appropri-
ate, the person qualifies for appointment of a court interpreter if the LEP person is a participant in a legal proceeding. Iowa Ct. R. 47.3(1).

While our caselaw on the use of interpreters is sparse, we have reviewed claims that inadequate translation services deprived the defendant of a fair trial. *See Thongvanh v. State*, 494 N.W.2d 679, 682 (Iowa 1993) (rejecting challenge to adequacy of translation in light of the defendant's ability to communicate with counsel, failure to object to the translation during trial, and the trial court's precaution of allowing additional time for translation). We noted that "a non-English speaking defendant can only have proper and adequate cross-examination if he is able to understand the testimony of the witnesses and is able to communicate effectively with his defense counsel." *Id.*

In *Leutfaimany*, we discussed the applicable standard for the *appointment* of an interpreter. 585 N.W.2d at 207. Leutfaimany claimed the district court erred by denying his application for appointment of an interpreter. *Id.* We recognized that "[o]ur review of rulings on such an application is for abuse of discretion." *Id.* We noted Leutfaimany frequently wrote and communicated and testified in English and rejected his claim that an interpreter was necessary for his defense. *Id.* at 208.

 **B. Waiver of Interpreter Services.** Read together, section 622A.2 and rule 47.3(1) establish the right to an interpreter once the court has "a reasonable basis" to believe the person has limited English proficiency. However, unlike the laws of several other jurisdictions,[2] Iowa law does not

---

2. *See, e.g.*, Mass. Gen. Laws Ann. ch. 221C, § 3 (West, Westlaw through ch. 74 of the 2017 1st Ann. Sess.); Mo. Ann. Stat. § 476.803(4) (West, Westlaw through 2d Extraordinary Sess. of 99th Gen. Assemb.); N.M. Stat. Ann. § 38-10-6 (West, Westlaw through 1st Reg. & Spec. Sess. of 53rd Leg. (2017)); S.C. Code Ann. § 15-27-155(A) (Westlaw through 2017 Sess.); Wash. Rev. Code Ann. § 2.43.060 (West, Westlaw through 2017 3d

*expressly* provide for a right to waive interpretation services during court proceedings. The court of appeals nevertheless noted both Iowa Code section 622A.2 and Iowa Court Rule 47.3(1) "employ terms suggesting the right to an interpreter can be waived" and concluded, "[l]ike other entitlements or benefits for which a criminal defendant qualifies, the statutory right to an interpreter may be waived."

We have recognized that "[a] broad array of ... statutory rights protecting defendants in criminal cases may be waived." *State v. Johnson,* 770 N.W.2d 814, 822–23 (Iowa 2009) (waiver of time limitations imposed by Iowa Code section 821.1, art. V(c)); *see State v. Wallace,* 475 N.W.2d 197, 201 (Iowa 1991) (waiver of requirement to instruct the jury on lesser included offenses); *State v. Hinners,* 471 N.W.2d 841, 845 (Iowa 1991) ("[I]f a defendant can waive such important constitutional rights, the defendant ought to be able to waive a lesser statutory right such as the right of appeal."); *State v. LeFlore,* 308 N.W.2d 39, 41 (Iowa 1981) (waiver of ninety-day statutory right to speedy trial). '

■ The absence of an express waiver provision in the governing statute is not determinative. In *Whitwer v. Civil Service Commission,* we held that a firefighter with a statutory right to appeal his termination under Iowa Code chapter 400 could waive that right through a last-chance agreement. 897 N.W.2d 112, 121 (Iowa 2017). We reached that conclusion in part

because chapter 400 does not expressly *prohibit* waivers of the statutory right of appeal. *Id.* at 119. The legislature knows how to prohibit waivers of statutory rights when it chooses to do so. *See id.* (identifying various statutes in which "the legislature has declared that any purported waiver of statutory rights is void against public policy"); *see also* Iowa Code § 96.15(1) ("Any agreement by an individual to waive, release, or commute the individual's rights to [unemployment] benefits or any other rights under this chapter shall be void."); *id.* § 216E.6(2) ("Any waiver of rights by a consumer under this chapter is void."); *id.* § 322G.13 (declaring that a waiver of rights related to defective motor vehicles "is void as contrary to public policy"); *id.* § 579B.6 (providing that a waiver of the right to file a lien under that chapter "is void and unenforceable"). The legislature did not expressly prohibit the waiver of interpreter services in chapter 622A.2. We hold that Gomez Garcia was entitled to waive the services of an interpreter.

■ **C. The Procedure for Waiving Use of an Interpreter.** The court of appeals concluded the validity of the waiver hinges "on the knowing and voluntary nature of [the defendant's] affirmative request to forego interpretation services." Other courts likewise require the trial court to find that the waiver of the right to an interpreter is made "knowingly, intelligently, and voluntarily." *See, e.g., Garcia v. State,* 429 S.W.3d 604, 609 (Tex. Crim.

Spec. Sess.); Wis. Stat. Ann. § 885.38(4) (West, Westlaw through 2017 Act 58). The Federal Court Interpreters Act expressly provides for waivers:

> Any individual other than a witness who is entitled to interpretation ... may waive such interpretation in whole or in part. Such a waiver shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with

counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, the nature and effect of the waiver.

28 U.S.C. § 1827(f)(1) (2012).

App. 2014). We have applied this standard in other contexts, such as waiver of a jury trial,[3] waiver of counsel at trial,[4] and entry of a guilty plea.[5] We conclude that a defendant's waiver of a right to an interpreter must be knowing, voluntary, and intelligent.

A New Jersey appellate court determined that state should follow the waiver requirements set forth in the Federal Court Interpreters Act:

[The] defendant must explicitly state on the record that he is waiving his right to an interpreter, after having had the opportunity to consult with counsel and after having the judge explain the consequences of such action to him (via interpreter, if necessary). The trial judge shall not approve any waiver unless he finds these provisions have been met and that the waiver is knowing, voluntary, and intelligent.

*State v. Rodriguez*, 294 N.J.Super. 129, 682 A.2d 764, 771 (1996) (citing 28 U.S.C. § 1871(f)(1)). We agree and conclude that our trial courts going forward should engage in an on-the-record colloquy with the defendant and counsel (and an interpreter if needed) before determining whether the defendant's waiver of the interpreter is knowing, voluntary, and intelligent.

The colloquy should address the ways an interpreter can assist a person of limited English proficiency, including (1) translating the defendant's testimony if he or she takes the stand, (2) facilitating communication between the defendant and his or her English-speaking attorney, and (3) enabling the defendant to reasonably understand the trial proceedings conducted in English. *See State v. Neave,* 117 Wis.2d 359, 344 N.W.2d 181, 183 n.2 (1984) (identi-

fying those as the "three principal reasons why a non-English speaking criminal defendant needs an interpreter"), *abrogated on other grounds by State v. Koch,* 175 Wis.2d 684, 499 N.W.2d 152, 158 (1993).

The ABA Standards for Language Access in Courts outline an appropriate procedure for a valid waiver. *See generally* Standards for Language Access in Courts 3.3 cmt., at 43 (Am. Bar Ass'n 2012) [hereinafter ABA Standards]. The waiver should be made on the record through the use of an interpreter. *Id.* Under a section entitled "Best Practices," the ABA Standards provide a "checklist" of relevant considerations.

● The LEP person intentionally declined interpreter services through verbal communication rather than passively or through silence;

● The LEP person knew that interpreter services were available;

● The LEP person knew about the costs (if any) of interpreter services;

● The LEP person was advised of the role of the interpreter, including the obligation of the interpreter to maintain confidentiality; and

● The LEP person was aware of the advisability of communicating in one's native language.

*Id.* 3.3 cmt., at 45. The district court should use open-ended questions to assess the defendant's English proficiency. *Id.* 3.3 cmt., at 44. We encourage adherence to these ABA Standards.

**D. The Validity of Gomez Garcia's Waiver.** The court of appeals concluded Gomez Garcia validly waived his right to an interpreter, and neither the State nor Gomez Garcia contends his waiver was in-

---

3. Iowa R. Crim. P. 2.17(1).

4. *State v. Cooley,* 608 N.W.2d 9, 15 (Iowa 2000).

5. Iowa R. Crim. P. 2.8(2)(*b*).

effective. We note the colloquy only partially complied with the federal and ABA Standards. Gomez Garcia's trial counsel expressly waived his right to an interpreter; Gomez Garcia personally was aware that interpretation services existed, having used them throughout his pretrial proceedings; and his own colloquy with the district court adequately demonstrated that he could speak English and understood the proceedings and the charges against him.

The district court's colloquy, however, failed to comply with the federal and ABA Standards in several respects. The interpreters were excused before the colloquy. The district court failed to warn Gomez Garcia of the potential disadvantages of going to trial without an interpreter's services. And Gomez Garcia personally never affirmatively stated, on the record, that *he* wished to waive an interpreter; rather, the request came from his attorney. *See Neave*, 344 N.W.2d at 185–88 (discussing the distinction between waivers asserted by counsel and by the defendant personally). Some courts have invalidated the waiver of an interpreter asserted by counsel alone. *See id.* at 189; *People v. Mata Aguilar*, 35 Cal.3d 785, 200 Cal.Rptr. 908, 677 P.2d 1198, 1204–05 (1984) (en banc) (rejecting counsel's waiver because the record did not show the defendant personally voluntarily and intelligently waived his right to an interpreter); *Rodriguez*, 682 A.2d at 771 (finding waiver by attorney alone ineffective).

The validity of Gomez Garcia's waiver, however, is not a contested issue on appeal. To the contrary, Gomez Garcia argues on appeal that his waiver was valid, and the State has conceded that point. The trial court lacked any Iowa precedent outlining the requirements for waiving an interpreter. We assume without deciding that Gomez Garcia waived his right to the services of an interpreter.

■ **E. The District Court's Requirement for Standby Interpreters.** The district court required standby interpreters to ensure that Gomez Garcia's "right to fair trial [was] protected." The, court of appeals reversed, concluding that the district court's requirement of standby counsel violated Gomez Garcia's right to choose to waive an interpreter. As noted, we review the district court's ruling requiring standby interpreters for abuse of discretion.[6] We conclude the district court properly balanced the goal of ensuring a fair trial while accommodating in part Gomez Garcia's request to waive the interpreter on the morning of trial. The district court chose a reasonable middle ground by ensuring that Gomez Garcia had access to translation services, even if he elected not to use them.

The trial judge had to make a game-day decision with a jury waiting and little Iowa precedent to guide him when Gomez Garcia, for the first time, asked to waive the court-ordered interpreter services he originally requested and had been using throughout the pretrial proceedings. Gomez Garcia gives no reason for not seeking to waive the interpreter well before the morning of trial when jurors and two in-

---

**6.** A close analogy is provided by the federal appellate decisions reviewing for abuse of discretion trial court rulings denying the defendant's request to testify without an interpreter. *See, e.g., United States v. Ruiz*, 665 Fed. Appx. 607, 611 (9th Cir. 2016) ("We review for abuse of discretion a district court's determination of whether a defendant requires an interpreter or can forego one and testify in

English."); *United States v. Petrosian*, 126 F.3d 1232, 1234–35, 1234 n.3 (9th Cir. 1997) (noting trial court's concerns over the defendant's ability to give reliable testimony in English and reviewing for abuse of discretion the decision "as to the manner in which to protect the defendant's right to testify on his own behalf").

terpreters had been summoned at State expense. Gomez Garcia raised three objections to an interpreter: (1) he spoke English well enough not to need one, (2) the translation would be distracting, and (3) jurors would be prejudiced by an interpreter's presence. The court's use of a *standby* interpreter appropriately responded to all three objections.

First, the court had reason to question Gomez Garcia's belated assertion that he did not need an interpreter. Gomez Garcia, a native of Honduras, personally requested an interpreter at his initial bond review hearing, and a standing order was entered providing for an interpreter for the duration of the case. He used an interpreter for four separate pretrial hearings as well as a jail conference.[7] The district court was justifiably concerned Gomez Garcia might change his mind or that the need for an interpreter could arise at some point in the trial. Having a standby interpreter was prudent, just as district courts may appoint standby counsel for self-represented defendants who waive their right to court-appointed counsel.[8] As the American Bar Association and other authorities have opined, courts unsure of the need for translation services should err on the side of making them available.

An ABA publication distinguishes mere English *proficiency* and a higher-bar English *fluency*:

> [A]n individual whose English falls short of the ability to communicate in a language easily and effectively should be appointed an interpreter to ensure accuracy of the proceedings.... The seriousness of the charges involved in a case, or of the consequences or the complexity of the proceedings, may require a high level of proficiency.... [I]f the judge has any doubt about the ability of the LEP person to comprehend the proceedings fully or adequately to express him or herself, the court should appoint a certified or qualified interpreter.

ABA Standards 3.3 cmt., at 43; *see* 4A B. John Burns, *Iowa Practice Series™: Criminal Procedure* § 15:1, at 255 (2016) [hereinafter *Iowa Practice Series*] ("Some legal concepts do not translate from one language to another. The English word 'arraignment,' for example, apparently has no counterpart in the Spanish language."); *see also Iowa Practice Series* § 15:1, at 253–54 (noting that "defense counsel is well-advised to err on the side of procuring the services of a qualified interpreter, if for no other reason than to be available to clarify terms the defendant does not understand" and suggesting that "courts arguably should [be] more inclined to resolve doubts in favor of providing interpreters"); *cf. State v. Inich*, 55 Mont. 1, 173 P. 230, 234 (1918) ("[I]t is often the case that a person who understands and speaks with reasonable ease the language of the street or of ordinary business encounters difficulty and embarrassment when subjected to examination as a witness during proceedings in court."). In any event, Gomez Garcia was free to testify in English and did so.

Without a standby interpreter, the district court risked a midtrial continuance or a retrial if Gomez Garcia changed his mind again and claimed he had needed translation services. *See, e.g., Vasquez v. United States*, Civil No. 14–5297 (NLH), 2016 WL 1700533, at *6 (D.N.J. April 28, 2016) (ad-

---

7. An interpreter was provided but was not used for the February 13 continuance hearing.

8. *See State v. Johnson*, 756 N.W.2d 682, 687 (Iowa 2008) (explaining role of standby coun-

sel); *cf. United States v. Miller*, 806 F.2d 223, 224 (10th Cir. 1986) (allowing use of standby interpreter for witness who "had difficulty in understanding some 'American' words and phrases").

judicating challenge to guilty plea by defendant who claimed his counsel was ineffective for allowing him to plead guilty without the services of an interpreter). The wisdom of requiring a standby interpreter is exemplified by an Idaho case. In *State v. Alsanea*, the defendant appealed his convictions for assault and related crimes, claiming his trial counsel's waiver of his right to an interpreter was ineffective and the district court erred by allowing him to testify in English, his second language. 138 Idaho 733, 69 P.3d 153, 156, 161 (Idaho Ct. App. 2003). The Idaho Court of Appeals reviewed decisions from three other appellate courts that reversed convictions on grounds that trial counsel's waiver of the interpreter was ineffective without the defendant's personal, knowing waiver. *Id.* at 161–62 (citing *Mata Aguilar*, 200 Cal.Rptr. 908, 677 P.2d at 1204–05; *Rodriguez*, 682 A.2d at 771–72; *Neave*, 344 N.W.2d at 186–89). The *Alsanea* court found those decisions distinguishable and affirmed the convictions *because* the trial court had the foresight to require a standby interpreter.

> Unlike the situations faced by the defendants in *Neave*, *Mata Aguilar*, and *Rodriguez*, where the defendants did not have any access to an interpreter, Alsanea was not deprived of his interpreter's assistance. Indeed, after Alsanea's attorney advised the district court that Alsanea wished to have the questions and answers in English, the district court nevertheless required Alsanea's interpreter to be physically near Alsanea in the event he needed assistance. Having appointed an interpreter to be readily available to assist Alsanea if necessary, the district court was under no obligation to constantly monitor the use which Alsanea and trial counsel made of the interpreter.

*Id.* at 162–63; *see also Cadet v. State*, 809 So.2d 43, 45 (Fl. Dist. Ct. App. 2002) (affirming conviction notwithstanding disputed waiver because trial judge had made interpreter available). These cases show the district court's caution in ordering a standby interpreter was warranted, particularly given the lack of Iowa precedent for waiving an interpreter.

As a Texas appellate court noted, "Continuous, simultaneous translation provides the most effective protection of the non-English speaking defendant's rights. Trial courts cannot be placed in an untenable position of providing reversible error no matter which way they turn." *Frescas v. State*, 636 S.W.2d 516, 518 (Tex. App. 1982). We share that concern and decline to put our trial judges in a lose-lose position.

Second, the district court addressed Gomez Garcia's concern that he would be distracted by the translation. Instead of placing the interpreter next to Gomez Garcia at counsel table whispering translations in his ear, the interpreter would be seated back in the spectator section. Gomez Garcia had the option to receive translations through a wireless earpiece and could eliminate any unwanted distraction simply by removing his earpiece. *See id.* ("Simple expedients are available on the spot to correct any actual harm which a defendant may be suffering through excessive translation.").

Third, the district court addressed Gomez Garcia's concern about juror prejudice by offering to give a cautionary jury instruction admonishing jurors not to make any assumptions about the presence of interpreters. We presume jurors follow the court's limiting instructions. *State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012) (affirming denial of mistrial after witnesses violated order in limine excluding evidence of victim's death because the court "instructed the jury that it was not to consider the fact that the victim died" and "[j]u-

rors are presumed to follow instructions"). The court of appeals cited several unpublished decisions from other jurisdictions noting prospective jurors who harbored bias against persons in this country who do not speak English.[9] Yet Gomez Garcia would have had the opportunity to explore such attitudes during jury selection and challenge such jurors for cause or remove them through peremptory strikes. *See State v. Mootz*, 808 N.W.2d 207, 224–25 (Iowa 2012) (discussing use of peremptory challenges, including to "eliminate those jurors perceived as harboring subtle biases . . . which were not elicited on voir dire or which do not establish legal cause for challenge" (quoting *Commonwealth v. Hampton*, 457 Mass. 152, 928 N.E.2d 917, 927 (2010))). Moreover, Gomez Garcia planned to testify in English, and the interpreter would not be at his side. He was free to remove the earpiece. A juror unfortunately biased against Hispanics would hold that bias regardless of whether an interpreter was in the courtroom. A standby interpreter's presence would be far less impactful than four armed and uniformed state troopers in the front row of the spectator section during the criminal trial, which the United States Supreme Court held did not violate a defendant's right to a fair trial on

charges of armed robbery. *Holbrook v. Flynn*, 475 U.S. 560, 570–71, 106 S.Ct. 1340, 1346–47, 89 L.Ed.2d 525 (1986) (rejecting argument that the presence of the armed, uniformed officers unfairly suggested to the jury that these defendants were dangerous). In any event, Gomez Garcia waived the jury, and his case was tried to the court. *See State v. Richards*, 879 N.W.2d 140, 152 (Iowa 2016) (contrasting jury trials and bench trials because the judge is less susceptible to deciding the case on an improper basis); *State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004) ("[L]egal training helps equip those in the profession to remain unaffected by matters that should not influence the determination."). Gomez Garcia does not claim the trial judge's fact-finding was influenced by the standby interpreters.

Gomez Garcia claims the court's order requiring standby interpreters prompted him to waive the jury. Even if true, this claim fails because the court acted within its discretion by requiring the standby interpreters. In any event, Gomez Garcia made no record in district court to support this claim. The State credibly suggests he in fact waived the jury for a reason unrelated to the standby interpreters—specifi-

9. The court of appeals cited these decisions: *State v. Acevedo*, No. 2 CA–CR 2008–0114, 2009 WL 2357163, at *5 (Ariz. Ct. App. July 31, 2009) (prospective jurors who expressed bias against defendant for using a translator were dismissed for cause); *Rodriguez v. State*, No. 5271999, 2001 WL 58961, at *1 (Del. Jan. 18, 2001) (concluding trial court erred by failing to ask about foreign language bias during jury selection but affirming conviction based on lack of prejudice and because "jurors were instructed not to be influenced by the fact that a witness testified through an interpreter"); *State v. Medina*, No. 25732–1–III, 2008 WL 934075, at *9 (Wash. Ct. App. Apr. 8, 2008) (rejecting challenge to two jurors who "admitted bias against individuals who do not speak English" because their responses "indicated they could set their pre-

conceived ideas aside"). The court of appeals also cited *Escobedo v. Lund*, 948 F.Supp.2d 951, 990 n.15 (N.D. Iowa 2013) (observing, based on nearly nineteen years judicial experience, that "anti-Hispanic bias" is a common problem among prospective jurors in northwest Iowa and emphasizing the importance of voir dire to reveal such biases), *rev'd in part*, 760 F.3d 863 (8th Cir. 2014). These cases demonstrate the importance of exploring foreign language bias during jury selection. The Supreme Court of Georgia, however, concluded it "is not professionally reasonable to decide to forego obtaining an interpreter for [a defendant who was not a native English speaker] based on speculative fears of juror bias" especially without the defendant's consent. *Ling v. State*, 288 Ga. 299, 702 S.E.2d 881, 883 n.1 (2010).

cally, because he was concerned the jury would be adversely influenced by his criminal record for unlawful reentry into the United States. He is not entitled to relief.

The court of appeals decision in this case stands alone. We found no other case holding that the use of a standby interpreter over a defendant's objection violated the right to waive an interpreter. We determine the district court did not abuse its discretion by ordering standby interpreters under the circumstances of this case. We therefore affirm the district court's judgment of conviction.

### F. Ineffective Assistance of Counsel.

Finally, we address Gomez Garcia's claim that he received ineffective assistance of counsel while waiving his right to a jury trial. "To establish an ineffective-assistance-of-counsel claim, a defendant must typically show that (1) counsel failed to perform an essential duty and (2) prejudice resulted." *State v. Keller*, 760 N.W.2d 451, 452 (Iowa 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "The defendant must prove both elements by a preponderance of the evidence." *Id.* If the defendant fails to prove either breach or prejudice, his ineffective-assistance-of-counsel claim must fail. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("Reversal is warranted only where a claimant makes a showing of both elements.").

Iowa Rule of Criminal Procedure 2.17(1) delineates how and when a criminal defendant may waive a jury trial. The rule provides,

Cases required to be tried by jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and *on the record* within 30 days after arraignment, or if no waiver is made within 30 days after arraignment the defendant may waive within ten days after the completion of discovery, but not later than ten days prior to the date set for trial, as provided in these rules for good cause shown, and after such times only with the consent of the prosecuting attorney.

Iowa R. Crim. P. 2.17(1) (emphasis added).[10] We have held the rule "requires the court to conduct an in-court colloquy with defendants who wish to waive their jury trial rights." *Liddell*, 672 N.W.2d at 811–12. The rules require this colloquy to be on the record. Iowa R. Crim. P. 2.17(1); *id.* r. 2.19(4). Going forward, district courts must ensure the jury-waiver colloquy is conducted *on the record* without allowing the parties to waive the reporting of this colloquy.[11]

Gomez Garcia's counsel failed to comply with requirements of rule 2.17(1). The transcript indicates in one sentence that

**10.** The record is silent whether the prosecution consented to Gomez Garcia's waiver of the jury. The prosecution's consent is required under rule 2.17(1) to waive a jury within ten days of trial.

**11.** Rule 2.19(4) expressly prohibits waiver of the reporting of opening statements and closing arguments in criminal trials without mentioning jury waivers but otherwise incorporates by reference the reporting requirements of Iowa Rule of Civil Procedure 1.903(2), which in turn allows parties to waive reporting of trial proceedings. *See* Iowa R. Crim. P.

2.19(4); Iowa R. Civ. P. 1.903(2). Rule 2.17(1) expressly requires jury waivers to be "on the record," and as the more specific provision, controls over general provisions allowing reporting to be waived. *See* Iowa Code § 4.7 (specific provision controls over general). Based on rule 2.17(1) and as a matter of sound judicial administration, we direct district courts to require the reporting of oral jury-waiver colloquies in criminal trials notwithstanding any requests by the parties to waive such reporting.

Gomez Garcia waived his right to a jury trial during a recess.[12] No written waiver was filed, nor was there an on-the-record colloquy to establish that Gomez Garcia's waiver was knowing and voluntary. The parties agree that defense counsel failed to comply with rule 2.17(1)'s requirement of a detailed on-the-record colloquy. The absence of a *reported* jury-waiver colloquy, however, does not mean Gomez Garcia's jury waiver was not voluntary and intelligent. *See State v. Feregrino*, 756 N.W.2d 700, 708 (Iowa 2008) ("The absence of an oral colloquy or a written waiver does not necessarily prove that a defendant failed to understand the nature of the right waived by proceeding to a non-jury trial."). To the contrary, the *unreported* colloquy convinced the trial judge that Gomez Garcia's jury waiver was in fact knowing and voluntary, as stated in the district court's decision and verdict. We reiterate that "an in-court colloquy is an important tool by which a court may ascertain whether a defendant's waiver of his right to a jury trial is knowing, voluntary, and intelligent." *Liddell*, 672 N.W.2d at 811. A reported colloquy is also critically important for appellate review.

Gomez Garcia must also show prejudice. *Dempsey*, 860 N.W.2d at 868. "[I]n order to establish the prejudice prong, [Gomez Garcia] must prove by a preponderance of the evidence that, but for counsel's failure to assure compliance with the rule, [he] would not have waived [his] right to a jury trial." *Keller*, 760 N.W.2d at 453. The existing record is inadequate to determine whether Gomez Garcia would have declined to waive the jury and was thereby actually prejudiced. *See Feregrino*, 756 N.W.2d at 708 (concluding the record was inadequate to determine "whether Fere-

grino was actually prejudiced by his counsel's failure to obtain a jury-trial waiver that complied with the rule"). As noted, Gomez Garcia and his trial counsel may have made a strategic choice to waive the jury because his testimony could open the door to evidence of his felony conviction for unlawful reentry into the United States. Further development of the record is required.

Gomez Garcia may bring his ineffective-assistance-of-counsel claim in a postconviction-relief action. *See State v. Clay*, 824 N.W.2d 488, 502 (Iowa 2012) (ineffective-assistance-of-counsel claims requiring further development of the record must be brought in a postconviction-relief action); *see also Keller*, 760 N.W.2d at 453 (determining defendant's ineffective-assistance-of-counsel claim could not "be resolved on direct appeal" because "an evidentiary hearing [was] necessary"); *cf. State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005) ("[W]e will address ... claims [of ineffective assistance of counsel] on direct appeal when the record is sufficient to permit a ruling.").

## IV. Disposition.

For these reasons, we vacate the court of appeals decision and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

12. The transcript states, "The Defendant waived jury trial during recess, and the Court proceeded with bench trial."